# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYTHEON COMPANY a/b/t NETWORK CENTRIC SYSTEMS, 2501 West University Dr. M/S 8064 McKinney, TX 75070-0801 <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF THE ARMY, USARDECOM Acquisition Center ATTN: AMSRD-ACC-CC 4118 Susquehanna Ave APG, MD 21005-3013 <br><br> and <br><br> WASHINGTON MANAGEMENT GROUP, INC. d/b/a FEDSOURCES 1990 M St NW # 400 Washington, DC 20036 <br><br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. _____ ) ) ) ) ) ) ) ) ) |

## COMPLAINT

COMES NOW the Plaintiff, Raytheon Company, acting by and through its Network Centric Systems business unit ("Raytheon"), by and through its undersigned counsel, and hereby submit this Complaint against Defendant Department of the Army ("Army") and The Washington Management Group, d/b/a FedSources ("FedSources"). By this Complaint, Plaintiff Raytheon seeks to enjoin Defendant Army to instruct Defendant FedSources to return and/or destroy any and all information received in

response to its FOIA request regarding Contract No. W91CRB-07-D-0029 ("Contract"), and enjoin Defendant FedSources to comply with this demand. Further, Raytheon seeks to permanently prevent Defendants Army and FedSources from releasing Plaintiff's confidential and proprietary commercial and financial information (including pricing information) related to the Contract. Plaintiff Raytheon states for its Complaint against Defendants Army and FedSources as follows:

## NATURE OF THIS ACTION

1.    This action challenges the Army's decisions on or about July 30, 2007 ("July 30, 2007 Decision") and August 9, 2007 ("August 9, 2007 Decision") to release the Plaintiff's confidential and proprietary commercial and financial information (including pricing information) related to the Contract pursuant to various Freedom of Information Act ("FOIA") requests, including one from Defendant FedSources, over Raytheon's written and timely filed objection. Contrary to law and regulation, the Army actually released significant elements of this information to FedSources on or about August 6, 2007 with no notice to Raytheon of its intention to do so ("August 6, 2007 Release"). Raytheon was not informed of the August 6, 2007 Release until August 9, 2007.

2.    The July 30, 2007 Decision, The August 9, 2007 Decision, and the August 6, 2007 Release violate the federal Administrative Procedure Act ("APA") for several reasons. First, the information the Army decided to release falls within the scope of Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4). The Army is therefore not authorized by law to release such information. Second, the information the Army decided to release is

a trade secret within the meaning of the Trade Secrets Act ("TSA"). The Army is therefore prohibited by law from releasing such information.

3.    For these reasons, the Army's July 30, 2007 Decision, August 9, 2007 Decision, and August 6, 2007 Release are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. The July 30, 2007 Decision, August 9, 2007 Decision, and August 6, 2007 Release are also arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, Plaintiff respectfully requests that this Court hold Defendant Army's July 30, 2007 Decision, August 9, 2007 Decision, and August 6, 2007 Release to be unlawful, and accordingly set them aside. Furthermore, Plaintiff respectfully requests that this Court enjoin the Army to require Defendant FedSources to return and/or destroy any and all information received via the August 6, 2007 Release, and enjoin Defendant FedSources to comply with this demand. Further, Plaintiff respectfully requests this Court to permanently enjoin Defendants Army and FedSources from releasing the requested information.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 331 because this action arises under the laws of the United States. In particular, this action arises under the federal Administrative Procedure Act, as amended. This action also involves the application of the Freedom of Information Act, as amended, and the Trade Secrets Act, as amended.

5.    Venue is proper in this Court.

## PARTIES

6.     Plaintiff Raytheon Company is a Delaware corporation.     Raytheon Company's Network Centric Systems business unit has its principal place of business at 2501 West University Drive, M/S 8064, McKinney, Texas, 75070-0801.     Raytheon Company's Network Centric Systems business unit is engaged in, among other things, the business of manufacturing thermal weapon-mounted sights.

7.     Defendant Department of the Army is an agency of the United States as defined by the Administrative Procedure Act, 5 U.S.C. § 701(b)(1).  It is also an agency of the United States which falls within the scope of 28 U.S.C. § 1391.

8.     Upon information and belief, Defendant Washington Management Group d/b/a FedSources is a Virginia corporation with its principal place of business located at 1990 M Street NW, Ste. 400, Washington, DC 20036.[1]

## FACTUAL ALLEGATIONS

9.     On or about June 26, 2007, Defendant Army awarded Plaintiff Raytheon Contract No. W91CRB-07-D-0029, for delivery of thermal weapon sights for use by Army warfighters ("the Contract").  The Contract was and remains a multiple-award firm fixed priced Indefinite Delivery, Indefinite Quantity ("ID/IQ") contract.  The Contract was and remains for a period of five years.

---

[1] Plaintiff does not allege any wrongdoing on the part of Defendant FedSources, but has named them as a necessary party to allow this Court to retain the authority and ability to enforce meaningful relief on the merits.  Through no fault of its own, FedSources is now in possession of proprietary and confidential trade secrets belonging to Raytheon.  As noted below, counsel for FedSources recovered the package released by the Army prior to its being opened by FedSources, and has committed to retaining it unopened during the pendency of this matter.

10.    At the same time, similar contracts were issued to BAE Systems, Inc. ("BAE") and DRS, Inc. ("DRS")  BAE and DRS are competitors of Raytheon's in the thermal weapons sight market.

11.    Very detailed technical specifications and performance requirements for the thermal weapon sights procured by the Contract were established by the Army and provided to all offerors.   The resulting thermal weapons sights were, with minor variations, substantially similar in design and technical performance.   As such, the competition was primarily conducted on the basis of pricing and delivery options. As the contract proceeds, the Army will issue requests for proposals to fill delivery orders for the specified thermal weapon sights. Competition for these delivery orders will similarly be conducted primarily on the basis of price and delivery options.

12.    On or about July 5, 2007, Defendant FedSources submitted to Defendant Army a request pursuant to the FOIA ("FedSources FOIA Request").  The FOIA Request asked Defendant Army to produce the Contract, which included all of Raytheon's proprietary pricing data, and the accompanying Statement of Work ("SOW"), which incorporated proprietary elements of Raytheon's proposal, such as the terms of Raytheon's offered warranty.

13.    Defendant Army notified Plaintiff Raytheon of this request by email dated July 16, 2007 ("July 16, 2007 Email"). (Exhibit A.) The July 16, 2007 Email also stated "If you have any questions regarding the release of these documents, please [respond] by 24 Jul 07."

14.     On or about July 23, 2007, Plaintiff Raytheon responded to the July 16, 2007 Email by submitting to Defendant Army its Opposition to the FOIA Request ("Opposition to FedSources FOIA Request"). (Exhibit B.)  By its Opposition to FedSources FOIA Request, Raytheon strenuously objected to the release of all line-item price and price-related information contained in the Contract, and all proprietary information contained in either the Contract or the SOW.  The Opposition to FedSources FOIA Request also stated the legal grounds supporting Raytheon's demonstration that the release of the specified information is not authorized by the Federal Acquisition Regulation ("FAR"), is not authorized by the FOIA, and is prohibited by the Trade Secrets Act.  Raytheon also provided proposed redacted versions of the Contract and the SOW, indicating specifically what information Raytheon believed to be protected from release.  (Exhibit C.)[2]

15.     In mid-July the Army received a second FOIA request, submitted by the Law Offices of Gregory D. Jordan ("Jordan FOIA Request").  The Jordan FOIA Request asked Defendant Army to produce the Contract, which included all of Raytheon's proprietary pricing data, and all attachments, which include the Statement of Work ("SOW").

16.     Defendant Army notified Plaintiff Raytheon of this request by email dated July 17, 2007 ("July 17, 2007 Email").  (Exhibit D.)  The July 17, 2007 Email also stated

---

[2] Raytheon has concurrently moved to file Exhibits C and F under seal.  Therefore, Exhibits C and F are not attached to this Complaint, but are attached to the concurrently filed Motion to Seal, per LCvR 5.1(j).

that it was the Army's intent to release the requested material, and that Raytheon should respond by August 2, 2007 with any response.

17.    On or about August 2, 2007, Plaintiff Raytheon responded to the July 17, 2007 Email by submitting to Defendant Army its Opposition to the Jordan FOIA Request ("Opposition to Jordan FOIA Request"). (Exhibit E.)  By its Opposition to Jordan FOIA Request, Raytheon strenuously objected to the release of all line-item price and price-related information contained in the Contract and attachments. The Opposition to Jordan FOIA Request also stated the legal grounds supporting Raytheon's demonstration that the release of the specified information is not authorized by the Federal Acquisition Regulation ("FAR"), is not authorized by the FOIA, and is prohibited by the Trade Secrets Act.  Raytheon also provided proposed redacted versions of the Contract and the attachments, indicating specifically what information Raytheon believed to be protected from release.  (Exhibit F.)[3]

18.    On or about August 9, 2007, the Army sent Raytheon a letter rejecting these arguments, and stating that the Army intended to release the requested documents on August 20, 2007 ("August 9, 2007 Decision"). (Exhibit G.)

19.    Upon information and belief, the Army has received at least one other FOIA request, but the Army has taken the position that once the August 20, 2007 release takes place, the Army will have determined the releaseabilty of the entire contract file,

---

[3]  Plaintiff Raytheon has concurrently moved to file Exhibits C and F under seal. Therefore, Exhibits C and F are not attached to this Complaint, but are attached to the concurrently filed Motion to Seal, per LCvR 5.1(j).

and will process all further requests at that time under the determinations made in response to the first two with no further notice to Raytheon.

20.    The Contract includes Raytheon's pricing for delivery of completed thermal weapon sights, including base prices and "range prices," i.e. different prices set for orders of varying quantities of sights, with "volume discounts" applied to prices for larger orders.  The contract also included pricing for spare parts and support options. Both the Contract and the attachments included terms and conditions offered by Raytheon as part of its competitive strategy, including warranty terms and delivery schedule commitments.  All of this information was redacted from the Contract and attachments Raytheon submitted with its two Oppositions to the FOIA Requests.

21.    On August 9, 2007, the Army informed Raytheon via telephone that it had released elements of the Contract to FedSources on August 6, 2007.  Subsequent conversation on August 9, 2007 clarified that the Army had released to FedSources, at a minimum, all of Raytheon's base contract pricing, as well as a completely unredacted SOW.  At this time, Raytheon has not been provided with a copy of the as-released documents.

22.    Raytheon was not notified prior to the August 9, 2007 telephone call that the Army had overruled its objection, and was afforded no opportunity to appeal the Army's determination to this Court prior to release.  The Army stated that on July 30, 2007, the Army had written and sent a letter notifying Raytheon of the decision via Federal Express ("FedEx") overnight mail ("July 30, 2007 Letter").  The Army stated, however, that the package had been returned to the Army by FedEx on August 9, 2007 as

undeliverable, because it had been addressed to Raytheon's P.O. box, and FedEx does not deliver to P.O. boxes.

23.     The Army faxed Raytheon a copy of the letter on August 9, 2007, along with a copy of the shipping label on the FedEx envelope. (Exhibit H.) The envelope was addressed to Ms. Carol Harrington, Senior Manager, Contracts, Raytheon, P.O. Box 660246, M/S 31, Dallas, TX, 75260. Directly below the line upon which the P.O. box number was entered was the pre-printed instruction "We cannot deliver to P.O. boxes."

24.     Raytheon's Objection to FOIA Request included a return address, including a P.O. box number, which would have been effective for mailing by methods other than FedEx. Raytheon never requested correspondence to be sent via FedEx. Page 1 of the Contract included a street address, which would have been sufficient to ensure delivery via FedEx.

25.     The July 30, 2007 Letter, received by Raytheon on August 9, 2007, stated that the Army had determined that Raytheon "fail[ed] to support a conclusion that competitive harm will result from release of unit pricing, total amount, range pricing, range quantities, and warranty information in statement of work (3.2.10). This information reflects the price the government pays and is not exempt from release. I am directing the release of the basic contract and attachment 1 (Statement of Work). This release will be effected on August 6, 2007."

26.     Raytheon counsel has contacted FedSources and discussed the facts set forth above. FedSources has informed Raytheon that it has located the package sent by the Army before it was opened. FedSources counsel has committed to retain the package

unopened until this Court makes a determination on the merits. Therefore, the information has not been released to the public, and the authority of this Court to afford relief on the merits is unaffected by the August 6, 2007 Release.

27.    Upon information and belief, FedSources and the Law Offices of Gregory D. Jordan ("Jordan") are firms that, *inter alia*, file FOIA requests on behalf of third party clients. Upon information and belief, FedSources' and/or Jordan's clients are direct competitors of Raytheon's in the thermal weapon sight market.

28.    At all relevant times, Plaintiff Raytheon has considered the information sought by the FOIA Request to be confidential and proprietary commercial and financial information within the meaning of the FOIA, and have protected it as such.

29.    At all relevant times, Plaintiff Raytheon have considered the information sought by the FOIA Request to be trade secrets within the meaning of the TSA, and have protected them as such.

30.    On or about August 1, 2007, the Army requested terms from the offerors for a Contract requirement for 29 thermal weapon sights. (Exhibit I.) This solicitation makes clear that offerors are free to offer lower pricing for the task order than is contained in their awarded ID/IQ contract.

## COUNT ONE

### Violation of Administrative Procedure Act
### (Defendant's Action is in Excess of Statutory Authority Under FOIA)

31.    Plaintiff Raytheon incorporates by reference the allegations in Paragraphs 1 - 30 of its Complaint, as if fully set forth herein.

32.    The July 30, 2007 Decision, the August 9, 2007 Decision, and the August 6, 2007 Release of Defendant Army constitute a final agency action within the meaning of 5 U.S.C. § 704, and is therefore a reviewable action as defined by the Administrative Procedure Act. In its attempt to protect the information sought by the FOIA Request, Plaintiff Raytheon has exhausted all the available administrative remedies provided by the Army.

33.    Plaintiff Raytheon will suffer irreparable harm if the Army releases the Plaintiff's confidential and proprietary commercial and financial information (including pricing information) requested by the Jordan FOIA request, or by other subsequent requests.

34.    Plaintiff Raytheon will suffer irreparable harm if the Plaintiff's confidential and proprietary commercial and financial information (including pricing information) that the Army has released to FedSources are further disseminated either to FedSources' client or any other entity.

35.    The FOIA authorizes agencies to disclose certain information upon a request for records. 5 U.S.C. § 552(a). Exemption 4 of the FOIA, however, exempts privileged or confidential commercial or financial information from the application of the statute.

36.    The FOIA Requests seek privileged and confidential commercial or financial information that is exempted from the application of the FOIA. Therefore, Defendant Army is not authorized by the FOIA to disclose the requested information.

37.     The July 30, 2007 Decision, the August 9, 2007 Decision, and August 6, 2007 Release constitute an act which is unlawful because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C). It is also unlawful because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A).

38.     Accordingly, this Court should set aside the July 30, 2007 Decision and the August 9, 2007 Decision, enjoin the Army to direct FedSources to return or destroy any and all information received from the Army via the August 6, 2007 Release, enjoin FedSources to comply with the Army's direction, and permanently enjoin both the Army and FedSources from releasing any information requested by the FOIA Request to any party.

## COUNT TWO

### Violation of Administrative Procedure Act
### (Defendant's Action Violates the Trade Secrets Act)

39.     Plaintiff Raytheon incorporates by reference the allegations in Paragraphs 1- 38 of its Complaint, as if fully set forth herein.

40.     The July 30, 2007 Decision, the August 9, 2007 Decision, and the August 6, 2007 Release of Defendant Army constitute a final agency action within the meaning of 5 U.S.C. § 704, and is therefore a reviewable action as defined by the Administrative Procedure Act. In its attempt to protect the information sought by the FOIA Requests,

Plaintiff Raytheon has exhausted all the available administrative remedies provided by the Army.

41.     The information requested by the FOIA Requests contains Plaintiff's trade secrets within the meaning of the Trade Secrets Act, 18 U.S.C. § 1905.

42.     Plaintiff Raytheon will suffer irreparable harm if the Army releases the Plaintiff's trade secrets requested by the Jordan FOIA request, or by other subsequent requests.

43.     Plaintiff Raytheon will suffer irreparable harm if the Plaintiff's trade secrets that the Army has released to FedSources are further disseminated either to FedSources' client or any other entity.

44.     The TSA provides, among other things, that any government officer or employee who publishes, discloses, or makes known in any manner, or to any extent not authorized by law any information received in the course of employment that relates to trade secrets, confidential statistical data, or amounts of any income, profits, or losses, shall be fined or imprisoned, and shall be removed from office or employment. 18 U.S.C. § 1905.  Furthermore, when pricing information falls within Exemption 4 of the FOIA, the government is precluded from releasing it under the Trade Secrets Act.

45.     The July 30, 2007 Decision stated that Defendant Army would release requested trade secret information on or around August 6, 2007.  Upon information and belief, the August 6, 2007 Release was conducted in accordance with the Decision.  This release of trade secret information violated the TSA.  Retention of the information by

FedSources, or further dissemination of the information by FedSources would compound this violation.

46.    The July 30, 2007 Decision, the August 9, 2007 Decision, and the August 6, 2007 Release constitute an act which is unlawful because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C).  It is also unlawful because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A).

47.    Accordingly, this Court should set aside the July 30, 2007 Decision and the August 9, 2007 Decision, enjoin the Army to direct FedSources to return or destroy any and all information received from the Army via the August 6, 2007 Release, enjoin FedSources to comply with the Army's direction, and permanently enjoin both the Army and FedSources from releasing any information requested by the FOIA Request to any party.

### REQUESTED RELIEF

WHEREFORE, Plaintiff Raytheon respectfully request the following relief:

A.    That this Court enter judgment holding unlawful and setting aside the July 30, 2007 Decision, the August 9, 2007 Decision, and August 6, 2007 Release as being in excess of the Army's statutory authority; without observance of procedures required by law; otherwise contrary to law; and arbitrary, capricious, and an abuse of discretion;

B.    That this Court enjoin the Army to direct FedSources to return or destroy any and all information received from the Army via the August 6, 2007 Release, enjoin

FedSources to comply with the Army's direction, and permanently enjoin both the Army and FedSources from releasing any information requested by the FOIA Request to any party.

C.    That this Court award Plaintiff Raytheon its costs and reasonable attorney's fees to be paid by the Army; and

D.    That this Court grant Plaintiff Raytheon such other and further relief, legal or equitable, as justice may require.

Respectfully submitted,

ARNOLD & PORTER, LLP

By: _____
Kristen Ittig, Bar No. 452340
Stuart Turner Bar No. 478392
555 Twelfth Street
Washington, D.C. 20004
(202) 942-5000 Telephone
(202) 942-5999 Facsimile

*Attorney for Raytheon Company - Network Centric Systems*

Dated: August 14, 2007

# EXHIBIT A

| | |
|---|---|
| "McMillan, Beverly J Ms RDECOM" <Beverly.McMillan @us.army.mil> | To "'lbaty@raytheon.com'" <lbaty@raytheon.com> |
| 07/16/2007 08:22 AM | cc "McMillan, Beverly J Ms RDECOM" <Beverly.McMillan@us.army.mil> |
| | Subject W91CRB-07-D-0029 (Raytheon Company) (UNCLASSIFIED) |

Classification:  UNCLASSIFIED
Caveats: NONE

Ms. Baty, the RDECOM Acquisition Center has received a Freedom of Information
Act request from Fed Sources seeking a copy of subject contract with
statement of work.  My intent is to release a copy of the contract with
attachment 1 (SOW).  A copy of your proposal will not be released.  If you
have any questions regarding the release of these documents, please contact
me by 24 Jul 07.

Thank you,

Beverly McMillan
Management Analyst
USARDECOM Acquisition Center
ATTN: AMSRD-ACC-CC
4118 Susquehanna Ave
APG, MD 21005-3013
V: 410-278-0850 (DSN 298)
F: 410-306-3740 (DSN 458)
Email: beverly.mcmillan@us.army.mil

Army Contracting: One Community Serving Our Soldiers, Serving Our Nation
Classification:  UNCLASSIFIED
Caveats: NONE

# EXHIBIT B

**Raytheon**

Network Centric Systems
Mailing Address:
P. O. Box 660246 MS 31
Dallas, Texas
75266 USA

23 July 2007

In reply refer to:
431-214-2911

USARDECOM Acquisition Center
ATTN: AMSRD-ACC-CC
4118 Susquehanna Ave
APG, MD 21005-3013

ATTENTION:    Beverly McMillan
              Management Analyst

SUBJECT:      Response to Freedom of Information Act (FOIA) Pre-disclosure Notice,
              Contract W91CRB-07-D-0029 (TWSIIB IDIQ)

REFERENCE:    (a)    U.S. Army email received 16 July 2007

ENCLOSURE:    (1)    Red-Lined Contract W91CRB-07-D-0029, and Attachment 1,
                     Statement for Work
              (2)    Redacted Contract W91CRB-07-D-0029, and Attachment 1,
                     Statement for Work

Dear Ms. McMillan:

In response to the reference (a) email, in which RDECOM expresses its intent to release the subject contract and the Attachment 1 SOW in response to a FOIA request, Raytheon provides our position in enclosures (1) and (2) through specific identification of the information to be redacted and not to be released pursuant to Freedom of Information Act (FOIA), Exemption Four, 5 U.S.C. 552(b)(4), and as protected by the Trade Secrets Act, 18 U.S.C. § 1905.

The contract at issue was awarded as an IDIQ contract wherein RDECOM may exercise options to purchase under annual task orders. Similar contracts were also issued to BAE and DRS. All competitors will have the opportunity to provide revised pricing for future individual delivery orders that is lower than that currently identified in their contract. Under these circumstances, Raytheon considers the redacted information identified per the enclosures to be competition sensitive information and source selection sensitive information, the disclosure of which is likely to cause substantial harm to Raytheon's competitive position for future delivery orders under the Thermal Weapon Sight II Bridge ("TWSIIB") program. The program, by its very structure, remains competitive with each future delivery order until all five years of IDIQ range options are either exercised or expire.

In this case, because awarded CLIN quantities have been released and are available in the public domain, Raytheon is particularly sensitive to release of CLIN pricing, range pricing, range quantities and any references to funding or obligated amount by CLIN/SLIN. While it is true that in most cases competition for contracts is based on more than just price, courts reviewing release of pricing data under FOIA have clearly ruled that no other factor is "as readily quantifiable or objective as price." This is particularly true in the case of the TWSIIB program. Under the current contract, there is no difference in technical approach between the offerors, as all offerors have been contracted to produce the same item, under the same specifications. Therefore, the

importance of price will be greatly magnified as a competitive discriminator between the offerors. Under these circumstances, where all three competitors have demonstrated capability and capacity, the US Government customer must view price with greater weight (if not determinative weight) for the award of a future IDIQ task order, and must recognize the greater competitive harm that may arise from release of such information under FOIA.

Exemption 4 to the FOIA allows the Agency to withhold information where actual competition exists and where substantial competitive harm is likely. *National Parks & Conservation Association v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) announced a two-prong test for determining the confidentiality of business data under Exemption 4. The test permits withholding when disclosure would (1) impair the government's ability to obtain such necessary information in the future or (2) cause substantial harm to the competitive position of the submitter. The D.C. District Court has ruled that "line item pricing information . . . is exactly the type of information that constitutes 'confidential commercial or financial information' for purposes of FOIA." *MCI Worldcom v. Gen. Servs. Admin.*, 163 F.Supp.2d 28, 35 (D.D.C. 2001), *citing McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 306 (D.C. Cir. 1999).

The facts set forth above establish that actual competition exists in this case. *Gulf & Western Industries v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979), held that a "likelihood of substantial competitive injury" also needs to be shown to satisfy this test and further confirmed that withholding was proper when the information if released would allow a contractor's competitors to accurately calculate future bids. With little effort, combining the CLIN quantity and pricing information with other publicly available information, a competitor would be able to calculate with reasonable accuracy Raytheon's future competitive bids for future TWSIIB delivery orders.

In *Sperry Univac Division v. Baldridge, U.S. Dist. LEXIS 17764* (E.D. Va 1982), the District Court found the pricing information at issue was specific in nature and if released, competitors would be given insight into Sperry's pricing strategy. At issue in that case was current year pricing and discount information, which is very similar to the range pricing at issue in this case. Raytheon's contract includes order quantity ranges that trigger volume discounts for larger orders. Release of such information could give a competitor insight into Raytheon's discounting and pricing strategies, and allow a competitor to accurately estimate Raytheon's costs in order to undercut Raytheon's prices for future orders.

The risk of undercutting prices on future orders is at the center of the D.C. Circuit's most recent statement on the reach of Exemption 4. In *McDonnell Douglas Corp v. United States Department of the Air Force*, 375 F.3d 1182, 1193 (D.C. Cir. 2004), *reh'g en banc denied*, No. 02-5342 (D.C. Cir. 2004), the D.C. Circuit blocked release of unit prices where it was apparent from the record that "disclosure of plaintiffs' option year prices would likely cause [plaintiffs] substantial competitive harm by informing the bids of its rivals." *Id*, 442 F. Supp. 2d. at 35-36 *quoting McDonnell Douglas*, 375 F.3d at 1190 (2004). The D.C. District Court recently applied *McDonnell Douglas (2004)* in ruling that option year unit prices should not be released when competitors could use the prices to construct and submit lower priced proposals in an attempt to "underbid" the awardee and convince the agency to recompete option year work. *Canadian Commercial Corp v. Department of the Air Force*, 442 F.Supp.2d 15, 35-36, (D.D.C. 2006). The district court also rejected the argument that the FAR makes release of unit pricing mandatory, notwithstanding Exemption 4. *Id*. at 40-41.

In the case of the TWSIIB IDIQ contract, the competitive harm is even more immediate and compelling; the competition for the procured work has not ended, but will continue, delivery order by delivery order, on a basis almost exclusively defined by price. The risk of underbidding is even stronger here than under the facts of *McDonnell Douglas (2004)* or *Canadian Commercial Corp*.

On October 12, 2001, Attorney General John Ashcroft, published a FOIA policy memo encouraging the protection of, *inter alia*, sensitive business information where a sound legal basis exists to do so. The most current cases clearly reject a *per se* rule either for or against the release of CLIN pricing, but require a case-by-case evaluation of the facts. In those cases, such as this one, where the facts show that release of the pricing information will directly impact future competition for the same requirements, these courts have ruled in favor of withholding. In this case, Raytheon has substantiated both the existence of actual competition and the likelihood of substantial competitive harm.

In addition to a showing of the likelihood of substantial competitive harm, FOIA requires analysis based on the need of the public to know in order to evaluate government responsibility and to provide ongoing oversight. However, where the total contract quantities and total pricing have already been released (as they have here), the public has little need for further detailed information on competitor pricing. *McDonnell Douglas*, 375 F.3d at 1193 (2004) Such detailed information "has little to do with the core purpose of the FOIA, namely, contributing significantly to public understanding of the operations or activities of the government. On the contrary, the information now in suit reveals the internal workings of the contractor, not those of the Government, and would seem to shed little if any light upon the agency's performance of its statutory duties." *Id.* In its essence, FOIA is a disclosure statute, but FOIA recognizes that while citizens must be able to determine what their government is up to, they must also be able to confide in their government. The FOIA, in particular Exemption 4, represents a carefully balanced compromise between the interests of the public in disclosure and the legitimate privacy interests of those who do business with the government. The information at issue in this case sheds no useful light upon the practices of government, but instead aims a spotlight directly onto the competitive strategies of Raytheon. It should therefore be withheld under Exemption 4 to the FOIA.

As your email did not specifically request other attachments or the initial delivery order, our response is limited to the contract and attachment (1) SOW. Should the government's communicated intent to release the contract, although not stated in the email, extend also to delivery order 01, we request the government provide notice to the undersigned immediately so that we be given time to review and address Delivery Order 01, specifically.

Provided as enclosure (1) is a red-lined copy of the contract document, provided for Government use only, and highlights the competition sensitive data Raytheon is requesting be exempt from disclosure pursuant to Exemption Four of FOIA, 5 U.S.C. 552(b)(4). Provided as enclosure (2) is the redacted copy of the contract, wherein information exempt from disclosure has been removed. In the event that your office intends to release the referenced documents, we request that we receive formal notification prior to such release.

Should you have any questions, please contact the undersigned at (972) 344-3694, or via e-mail at charrington@raytheon.com.

Sincerely,

Carol Harrington
Senior Manager, Contracts

# EXHIBIT C

## (Attached to concurrently filed Motion to Seal)

# EXHIBIT D

From: McMillan, Beverly J Ms RDECOM
Sent: Tuesday, July 17, 2007 7:28 AM
To: 'lbaty@raytheon.com'
Cc: McMillan, Beverly J Ms RDECOM
Subject: W91CRB-07-D-0029 (Raytheon Company) (UNCLASSIFIED)

Classification:  UNCLASSIFIED
Caveats: NONE

Ms. Baty, the RDECOM Acquisition Center has received a Freedom of
Information Act request from the Law Offices of Gregory D. Jordan seeking a
copy of subject contract, modifications and all attachments.  My intent is
to release a copy of the contract, modifications and all attachments.  A
copy of your proposal will not be released.  If you have any questions
regarding the release of these documents, please contact me by 2 Aug 07.
You need only to address attachments 2 thru 11 since the contract and
attachment 1 is being handled under the FOIA request from Fed Sources.

Thanks again,

Beverly McMillan
Management Analyst
USARDECOM Acquisition Center
ATTN: AMSRD-ACC-CC
4118 Susquehanna Ave
APG, MD 21005-3013
V: 410-278-0850 (DSN 298)
F: 410-306-3740 (DSN 458)
Email: beverly.mcmillan@us.army.mil

Army Contracting: One Community Serving Our Soldiers, Serving Our Nation
Classification:  UNCLASSIFIED
Caveats: NONE


Classification:  UNCLASSIFIED
Caveats: NONE

# EXHIBIT E

# Raytheon

Network Centric Systems
Mailing Address:
P.O. Box 660246, M/S 31
Dallas, Texas
75266 USA

2 August 2007

In reply refer to:
431-433-2912

USARDECOM Acquisition Center
ATTN: AMSRD-ACC-CC
4118 Susquehanna Ave
APG, MD 21005-3013

ATTENTION:       Beverly McMillan
                 Management Analyst

SUBJECT:         Response to Freedom of Information Act (FOIA) Pre-disclosure Notice,
                 Contract W91CRB-07-D-0029 (TWSIIB IDIQ)

REFERENCE:    (a)    U.S. Army email received 17 July 2007

ENCLOSURE:    (1)    Identification of Documents with Redactions
              (2)    Red-Lined Contract W91CRB-07-D-0029, and Attachments 1, 3,
                     5, 11 and Delivery Order 0001
              (3)    Redacted Contract W91CRB-07-D-0029, and Attachments 1, 3,
                     5, 11 and Delivery Order 0001

Dear Ms. McMillan:

In response to the reference (a) email, in which RDECOM expresses its intent to release the subject contract and all contract modifications and attachments in response to a FOIA request, Raytheon provides our position herein and in enclosures (1), (2) and (3) through specific identification of the information to be redacted and not to be released pursuant to Freedom of Information Act (FOIA), Exemption Four, 5 U.S.C. 552(b)(4), and as protected by the Trade Secrets Act, 18 U.S.C. § 1905.

The contract at issue was awarded as an IDIQ contract wherein RDECOM may exercise options to purchase under annual task orders. Similar contracts were also issued to BAE and DRS. All competitors will have the opportunity to provide revised pricing for future individual delivery orders that is lower than that currently identified in their contract. Under these circumstances, Raytheon considers the redacted information identified per the enclosures to be competition sensitive information and source selection sensitive information, the disclosure of which is likely to cause substantial harm to Raytheon's competitive position for future delivery orders under the Thermal Weapon Sight II Bridge ("TWSII") program. The program, by its very structure, remains competitive with each future delivery order until all five years of IDIQ range options are either exercised or expire.

In this case, because awarded CLIN quantities have been released and are available in the public domain, Raytheon is particularly sensitive to release of CLIN pricing, range pricing, range quantities and any references to funding or obligated amount by CLIN/SLIN. While it is true that in most cases competition for contracts is based on more than just price, courts reviewing release of pricing data under FOIA have clearly ruled that no other factor is "as readily quantifiable or

objective as price." This is particularly true in the case of the TWSII program. Under the current contract, there is no difference in technical approach between the offerors, as all offerors have been contracted to produce the same item, under the same specifications. Therefore, the importance of price will be greatly magnified as a competitive discriminator between the offerors. Under these circumstances, where all three competitors have demonstrated capability and capacity, the US Government customer must view price with greater weight (if not determinative weight) for the award of a future IDIQ task order, and must recognize the greater competitive harm that may arise from release of such information under FOIA.

Exemption 4 to the FOIA allows the Agency to withhold information where actual competition exists and where substantial competitive harm is likely. *National Parks & Conservation Association v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) announced a two-prong test for determining the confidentiality of business data under Exemption 4. The test permits withholding when disclosure would (1) impair the government's ability to obtain such necessary information in the future or (2) cause substantial harm to the competitive position of the submitter. The D.C. District Court has ruled that "line item pricing information . . . is exactly the type of information that constitutes 'confidential commercial or financial information' for purposes of FOIA." *MCI Worldcom v. Gen. Servs. Admin.*, 163 F.Supp.2d 28, 35 (D.D.C. 2001), *citing McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 306 (D.C. Cir. 1999).

The facts set forth above establish that actual competition exists in this case. *Gulf & Western Industries v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979), held that a "likelihood of substantial competitive injury" also needs be shown to satisfy this test and further confirmed that withholding was proper when the information if released would allow a contractor's competitors to accurately calculate future bids. With little effort, combining the CLIN quantity and pricing information with other publicly available information, a competitor would be able to calculate with reasonable accuracy Raytheon's future competitive bids for future TWSIIB delivery orders.

In *Sperry Univac Division v. Baldridge, U.S. Dist. LEXIS 17764* (E.D. Va 1982), the District Court found the pricing information at issue was specific in nature and if released, competitors would be given insight into Sperry's pricing strategy. At issue in that case was current year pricing and discount information, which is very similar to the range pricing at issue in this case. Raytheon's contract includes order quantity ranges that trigger volume discounts for larger orders. Release of such information could give a competitor insight into Raytheon's discounting and pricing strategies, and allow a competitor to accurately estimate Raytheon's costs in order to undercut Raytheon's prices for future orders.

The risk of undercutting prices on future orders is at the center of the D.C. Circuit's most recent statement on the reach of Exemption 4. In *McDonnell Douglas Corp v. United States Department of the Air Force*, 375 F.3d 1182, 1193 (D.C. Cir. 2004), *reh'g en banc denied*, No. 02-5342 (D.C. Cir. 2004), the D.C. Circuit blocked release of unit prices where it was apparent from the record that "disclosure of plaintiffs' option year prices would likely cause [plaintiffs] substantial competitive harm by informing the bids of its rivals." *Id*, 442 F. Supp. 2d. at 35-36 *quoting McDonnell Douglas*, 375 F.3d at 1190 (2004). The D.C. District Court recently applied *McDonnell Douglas (2004)* in ruling that option year unit prices should not be released when competitors could use the prices to construct and submit lower priced proposals in an attempt to "underbid" the awardee and convince the agency to recompete option year work. *Canadian Commercial Corp v. Department of the Air Force*, 442 F.Supp.2d 15, 35-36, (D.D.C. 2006). The district court also rejected the argument that the FAR makes release of unit pricing mandatory, notwithstanding Exemption 4. *Id*. at 40-41.

In the case of the TWSIIB IDIQ contract, the competitive harm is even more immediate and compelling; the competition for the procured work has not ended, but will continue, delivery order

by delivery order, on a basis almost exclusively defined by price. The risk of underbidding is even stronger here than under the facts of *McDonnell Douglas (2004)* or *Canadian Commercial Corp.*

On October 12, 2001, Attorney General John Ashcroft, published a FOIA policy memo encouraging the protection of, *inter alia*, sensitive business information where a sound legal basis exists to do so. The most current cases clearly reject a *per se* rule either for or against the release of CLIN pricing, but require a case-by-case evaluation of the facts. In those cases, such as this one, where the facts show that release of the pricing information will directly impact future competition for the same requirements, these courts have ruled in favor of withholding. In this case, Raytheon has substantiated both the existence of actual competition and the likelihood of substantial competitive harm.

In addition to a showing of the likelihood of substantial competitive harm, FOIA requires analysis based on the need of the public to know in order to evaluate government responsibility and to provide ongoing oversight. However, where the total contract quantities and total pricing have already been released (as they have here), the public has little need for further detailed information on competitor pricing. *McDonnell Douglas*, 375 F.3d at 1193 (2004) Such detailed information "has little to do with the core purpose of the FOIA, namely, contributing significantly to public understanding of the operations or activities of the government. On the contrary, the information now in suit reveals the internal workings of the contractor, not those of the Government, and would seem to shed little if any light upon the agency's performance of its statutory duties." *Id.* In its essence, FOIA is a disclosure statute, but FOIA recognizes that while citizens must be able to determine what their government is up to, they must also be able to confide in their government. The FOIA, in particular Exemption 4, represents a carefully balanced compromise between the interests of the public in disclosure and the legitimate privacy interests of those who do business with the government. The information at issue in this case sheds no useful light upon the practices of government, but instead aims a spotlight directly onto the competitive strategies of Raytheon. It should therefore be withheld under Exemption 4 to the FOIA.

Provided as enclosure (1) is a summary of the documents in which Raytheon has identified redactions. Enclosure (2) is a red-lined copy of the documents containing redactions provided for Government use only, and highlights the competition sensitive data Raytheon is requesting be exempt from disclosure pursuant to Exemption Four of FOIA, 5 U.S.C. 552(b)(4). Provided as enclosure (3) is the redacted copy of the contract, wherein information exempt from disclosure has been removed. **In the event that your office intends to release the referenced documents without the full complement of redactions, we request that we receive formal notification prior to such release.**

Should you have any questions, please contact the undersigned at (972) 344-3694, or via e-mail at charrington@raytheon.com.

Sincerely,

Carol Harrington
Senior Manager, Contracts

Enclosure (1) to Raytheon
Letter 431-214-2912

## Identification of Documents with Redactions

| Document Number | Title | No. of Pages | Redactions | Notes |
|---|---|---|---|---|
| W91CRB-07-D-0029 | Basic Contract | 88 | Yes | 1 |
| Delivery Order 0001 | Delivery Order 0001 | 14 | Yes | 1 |
| Attachment 001 | Statement of Work | 19 | Yes | 2 |
| Attachment 002 | Document Summary List | 03 | No | |
| Attachment 003 | Performance Specification for Thermal Weapons Sight | 72 | Yes | 2 |
| Attachment 004 | Performance Specification for Thermal Imaging Module | 03 | No | |
| Attachment 005 | Quality Validation Plan | 116 | Redacted in its entirety | 2 & 3 |
| Attachment 006 | Consideration Equation | 02 | No | |
| Attachment 007 | DD Form 254 | 03 | No | |
| Attachment 008 | TOP 3-2-609 Test Operation Procedure – Chemical Compatibility of Nonmetallic Materials Used in Small Arms Systems | 44 | No | |
| Attachment 009 | Modular Ballistic Solution – Interface Control Drawing | 32 | No | |
| Attachment 010 | Bracket Drawings | 63 | No | |
| Attachment 011 | Spares Pricing Spreadsheet | 02 | Yes | 1 & 4 |

### Notes:

1.   Redactions supported in accordance with Raytheon letter 431-214-2912 dated 2 August 2007 and enclosed herein.

2.   Redactions supported in accordance with Raytheon letter 431-214-2912 dated 2 August 2007 and enclosed herein and supported by the fact that the source of the redacted data is Raytheon's competitive proposal in which competitors were required to specifically propose unique technical parameters for evaluation and which the is held to be highly competition sensitive and source selection sensitive for which the release is likely to cause substantial harm to Raytheon's competitive position in future delivery orders.

3.   Redactions supported in accordance with Raytheon letter 431-214-2912 dated 2 August 2007 and enclosed herein.  With specific regard to Attachment 005, Quality Validation Plan, Raytheon redacts this attachment in its entirety, *as it I,s in its entirety, an extraction from Raytheon's competitive proposal* and identifies Raytheon's unique approaches and processes to be utilized in performance of the contract and which were specifically evaluated by the government for this competitive award and as therefore exempt from release as source selection sensitive data.

4.   Redactions supported in accordance with Raytheon letter 431-214-2912 dated 2 August 2007 and enclosed herein Attachment 11, Spares Pricing Spreadsheet is redacted in it's entirety as every offeror in the TWSIIB competitive procurement was required to create a unique listing of spares, spares quantities and prices to support the offeror's unique spares strategy and *it is, in its entirety, an extraction from Raytheon's competitive proposal*.  Raytheon considers this listing in its entirety to be competition sensitive and source selection sensitive data, the release of which is likely to cause substantial harm to Raytheon's competitive position in future delivery orders.

Enclosure (2) to Raytheon
Letter 431-214-2912

**Red-Lined Contract W91CRB-07-D-0029, and
Attachments 1, 3, 5, 11 and Delivery Order 0001**

Enclosure (3) to Raytheon
Letter 431-214-2912

**Redacted Contract W91CRB-07-D-0029, and
Attachments 1, 3, 5, 11 and Delivery Order 0001**

# EXHIBIT F

## (Attached to concurrently filed Motion to Seal)

# EXHIBIT G

08/09/2007  14:41    410-278-0916         ACQUISITION CENTER              PAGE  01/02

Director
**USARDECOM** Acquisition Center
ATTN:  AMSRD-ACC-CC
4118 Susquehanna Avenue
APG, MD  21005-3013
V: 410-278-0850 (DSN 298)
F: 410-306-3740
Email: beverly.mcmillan@us.army.mil



**USARDECOM
ACQUISITION
CENTER**



| **To:** | Carol Harrington/Raytheon | **From:** | Beverly McMillan |
|---|---|---|---|
| **Fax:** | 972-344-3760 | **Pages:** | |
| **Phone:** | 972-344-3694 | **Date:** | 09 Aug 07 |
| **Re:** | FOIA (W91CRB-07-D-0029) | **CC:** | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**   See attached letter dated  9 Aug 07.



**DEPARTMENT OF THE ARMY**
US ARMY RESEARCH, DEVELOPMENT AND ENGINEERING COMMAND ACQUISITION CENTER
4118 SUSQUEHANNA AVENUE
ABERDEEN PROVING GROUND MD 21005-3013

REPLY TO
ATTENTION OF

August 9, 2007

Combat Operations Branch

Ms. Carol Harrington
Senior Manager, Contracts
Raytheon
P.O. Box 660246, M/S 31
Dallas, Texas  75266

Dear Ms. Harrington:

This is in response to your letter dated August 2, 2007 (431-433-2912) regarding objection to the release of information under contract W91CRB-07-D-0029 in response to Freedom of Information Act request from the Law Offices of Gregory D. Jordan.

I have considered your objection and I am directing the release of the contract with attachments. Attachment 3 has been redacted as requested, attachments 5 and 11 have been deleted. This release will be effected on August 20, 2007.

The point of contact for this action is Beverly McMillan, (410) 278-0850, email: beverly.mcmillan@us.army.mil.

Sincerely,

Kathryn J. Bankerd
Contracting Officer

# EXHIBIT H

**Director**
**USARDECOM Acquisition Center**
ATTN:  AMSRD-ACC-CC
4118 Susquehanna Avenue
APG, MD  21005-3013
V:  410-278-0850 (DSN 298)
F:  410-306-3740
Email: beverly.mcmillan@us.army.mil



 **Fax**

| | | | |
|---|---|---|---|
| **To:** | Carol Harrington/Raytheon | **From:** | Beverly McMillan |
| **Fax:** | 972-344-3760 | **Pages:** | |
| **Phone:** | 972-344-3694 | **Date:** | 09 Aug 07 |
| **Re:** | FOIA (W91CRB-07-D-0029) | **CC:** | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**  The attached letter in response to your objection to release contract W91CRB-07-D-0029 was sent FEDEX 30 Jul 07 to the address on your letterhead.  The FEDEX package was returned today, 09 Aug 07, as undelivered.  This was given to a clerk to send out and I was unaware that FEDEX could not deliver to PO Box addresses.  Unfortunately, the contract has been released.

08/09/2007  14:37    410-278-0916    ACQUISITION CENTER    PAGE  02/04



# DEPARTMENT OF THE ARMY
US ARMY RESEARCH, DEVELOPMENT AND ENGINEERING COMMAND ACQUISITION CENTER
4118 SUSQUEHANNA AVENUE
ABERDEEN PROVING GROUND MD 21005-3013

REPLY TO
ATTENTION OF

July 30, 2007

Combat Operations Branch

Ms. Carol Harrington
Senior Manager, Contracts
Raytheon
P.O. Box 660246, M/S 31
Dallas, Texas 75266

Dear Ms. Harrington:

This is in response to your letter dated July 23, 2007 (431-214-2911) regarding objection to the release of information under contract W91CRB-07-D-0029 in response to Freedom of Information Act request from Fed Sources.

I have considered your objection; however, you fail to support a conclusion that competitive harm will result from the release of unit pricing, total amount, range pricing, range quantities, and warranty information in statement of work (3.2.10). This information reflects the price the Government pays and is not exempt from release. I am directing the release of the basic contract and attachment 1 (Statement of Work). This release will be effected on August 6, 2007.

The point of contact for this action is Beverly McMillan, (410) 278-0850, email: beverly.mcmillan@us.army.mil.

Sincerely,

Kathryn J. Bankerd
Contracting Officer





Express

# EXHIBIT I

"Casey, Tara L Ms RDECOMAC"<Tara.L.Casey@us.army.mil>
To:    "Casey, Tara L Ms RDECOMAC"<Tara.L.Casey@us.army.mil>
Cc:
08/01/2007 12:24 PM
Subject: New order (UNCLASSIFIED)


Classification:  UNCLASSIFIED
Caveats: NONE


Good afternoon,

I just received a requirement for 29 additional MWTS.  Please respond back
(an email is fine) and let me know what your delivery schedule for these
items would be.  Revised pricing can also be submitted, but only if the
prices are lower than what was awarded in the basic contract.  I would like
your response by 3:30 PM on Thursday if at all possible.  However, if you
need more time, please just ensure your response is received no later than
3:30 PM on Friday, August 3rd.

If you have questions, please feel free to contact me.

Tara Casey
U.S. Army Research, Development and Engineering Command Acquisition Center
Phone:  410-278-0863
Fax:  410-278-0904
E-mail:  tara.l.casey@us.army.mil
Army Contracting: One Community Serving our Soldiers, Serving our Nation
Classification:  UNCLASSIFIED
Caveats: NONE

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2007, a true and accurate copy of the foregoing Complaint, with accompanying exhibits, was served on the following individuals. Exhibits C and F referenced in the text were not attached, and have been attached to the concurrently filed Motion to Seal. The Army has never identified a contact in its legal department for this FOIA matter, but Raytheon requests that the Army personnel in receipt of these documents forward the material to the Army's counsel at once:

Beverly McMillan                              (Email and Overnight Mail)
Management Analyst
USARDECOM Acquisition Center
ATTN: AMSRD-ACC-CC
4118 Susquehanna Ave
Aberdeen Proving Ground, MD 21005-3013
Tel: (410) 278-0850 (DSN 298)
Email: beverly.mcmillan@us.army.mil

Kathryn J. Bankerd                            (Fax and Overnight Mail)
Contracting Officer
USARDECOM Acquisition Center
ATTN: AMSRD-ACC-CC
4118 Susquehanna Ave
Aberdeen Proving Ground, MD 21005-3013
Tel: (410) 278-0850 (DSN 298)
Fax: (410) 306-3740

Carolyn Alston                                (Email and Overnight Mail)
General Counsel
Washington Management Group
1990 M St NW # 400
Washington, DC 20036
Tel: (202) 833-1120
Email: calston@washmg.com

_____
Stuart Turner

*07-1469*
*RMC*

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS

RAYTHEON COMPANY a/b/t NETWORK CENTRIC SYSTEMS

86888

### DEFENDANTS

DEPARTMENT OF THE ARMY

WASHINGTON MANAGEMENT GROUP d/b/a FEDSOURCES

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Stuart Turner
Kristen Ittig
Arnold & Porter, LLP
555 12th Street, NW
Washington, DC 20004
Tel: (202) 942-5759

Case: 1:07-cv-01469
Assigned To : Collyer, Rosemary M.
Assign. Date : 8/14/2007
Description: TRO/PI

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question (U.S. Government Not a Party)

◉ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

● **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

Ⓝ

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

"Reverse-FOIA" case under the federal Administrative Procedure Act 5 U.S.C. s 702, appealing release of information under FOIA 5 U.S.C. s 552

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** _____ Check YES only if demanded in complaint

**JURY DEMAND:** YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE __August 14, 2007__ SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.